Drake, Cb. J.,
delivered tbe opinion of tbe court:
By section 21 of tbe act of March 2,1799, “ to regulate the collection of duties on imports and tonnage” (1 Stat. L., 627), eacb collector of customs was authorized, “ with tbe approbation of the principal officer of tbe Treasury Department, to employ proper persons as weighers, gaugers, measurers, and inspectors at tbe several ports within bis district”; and that provision has ever since continued in existence, and is now contained in section 2621 of the Revised Statutes.
Its terms, in our judgment, authorize tbe collector, with tbe approbation of tbe Secretary of tbe Treasury, not only to employ persons for those positions, but to agree with them as to their compensation. Under it tbe claimant was employed, but not for a specified period; and be was to be paid tbe agreed compensation ‘ffivhen employed.”
He claims that tbe words “when employed” mean tbe period of time in which be held tbe situation. Tbe defendants contend that they mean tbe days be was actually employed in tbe discharge of tbe duties of tbe position.
Whatever room there'may be for difference of oinnion as to tbe meaning of those words, tbe claimant has precluded himself, by his own monthly acts during tbe whole period of his employment, from tbe benefit of tbe position be now assumes; for at tbe end of every month be rendered a bill for bis compensation for all tbe days of that month, “ Sundays excepted”, and never during that period intimated a claim that he was entitled to be paid for Sundays. This shows tbe construction be and tbe collector both put on tbe contract under which be served; and that construction precludes bis recovery here of any compensation for tbe days be excepted from bis bills.
To avoid this conclusion, be contends that be was entitled by express statute to a salary, of $2,000 per annum; and be relies for this on a clause in section 4 of tbe act of July 28,1866, “ to fix the compensation of certain collectors of customs, and for other purposes” (14 Stat. L., 308), in these words:
“ That in lieu of tbe compensation now allowed by law there shall hereafter be paid * * * to eacb of tbe custom-house weighers at tbe ports of Boston, Philadelphia, Baltimore, New Orleans, Portland, and San Francisco two thousand dollars per annum out of the appropriation for expenses of collecting tbe revenue ffiom customs.”
*262 This provision is now section 2739 of tbe Bevised Statutes.
It does not, in our opinion, have the effect claimed for it, for the claimant was not appointed as a weigher, but as a “weigher mid measurer”; which is a different thing, at any rate in terms, from a “ custom-house weigher.” The difference between the two may not have been very, great; but beyond doubt it existed, and the mere fact of its existence takes the case out of the act 9f 1866, which fixes an annual salary, and places it under the act of 1799, which left the compensation to be agreed upon between the collector, the Secretary of the Treasury, and the employee.
There is another view of the matter, which seems to show that this claimant was not by law entitled to a fixed annual salary of $2,000. Employed as “weigher and measurer,” of course he could be required to perform the functions of measurer. If he was, as weigher, to receive $2,000 salary, what was he to be paid for his services as measurer? The statutes nowhere provided any salary for a measurer, nor did they authorize in terms the office of “ weigher and measurer.” How, then, was the measurer to be paid ?' It seems to us only in one way, and that was under the contract of his employment in the double capacity of weigher and measurer, with a salary covering both capacities, the greater part of which might be earned by the weigher or the measurer, according to circumstances.
There is still another view which is adverse to the claimant’s position. He was employed not only as “weigher and measurer,” but as an occasional weigher and measurer”; and every month he rendered a bill as “ occasional weigher.”
Here, then, both by the employing power and the employee, a word was used which certainly was not used without a purpose. The statute does not use it, but speaks of “custom-house weighers.” Did the collector and the Secretary of the Treasury mean nothing by the use of the word “occasional”? Of course they had a meaning; and it seems clear that they meant the claimant’s position to be a different one from that which the act of 1866 meant by the words “custom-house weighers.” And this purpose is further made evident by the use of the other-words, “ when employed.” If the claimant was to be a weigher, within the meaning of the act of 1866, it is not supposable that either the collector or the Secretary of the Treasury would have attempted to cut down his statutory annual compensation by *263 counting- tlie days wlien be was not actually employed and refusing bim pay for those days, for those officers would have known, quite as well probably as we do, that there was no statute authorizing them so to razee an annual compensation fixed by law, and therefore that they could not do it.
It is no answer to this to say that the statute nowhere recognizes any such distinct grade of customs officers as “ occasional weighers.” True, it does not; but the collector had authority to employ temporary or occasional weighers as well as regular or permanent ones; and he saw fit to employ the claimant as an occasional one; and the latter agreed to that employment, and no other; and he also agreed to the terms of his employment; and worked for ten years and eight months under that employment, and was regularly paid the compensation he agreed to receive for his services as an “occasional weigher and measurer.” He cannot now be permitted to say that he was, in reality, something else than what his apj)ointment indicated, and what he himself, through all that period, every month affirmed it to be.
The claimant’s petition is dismissed.